PER CURIAM.
The Florida Bar has filed a motion pursuant to Rule Regulating the Florida Bar 10-7.1(b)(4) requesting that this Court issue an order enjoining respondent Erdon I. Abreu from engaging in the unlicensed *753 practice of law. We have jurisdiction. See art. V, § 15, Fla. Const.

FACTS

On September 12, 2001, The Florida Bar filed a petition against the unlicensed practice of law (UPL) alleging the following:
Erdon I. Abreu was not a member of the Florida Bar at all times material to the instant petition.
Count I. On June 28,1999, Rachel Yanes sought Abreu’s services in making a claim to the Immigration and Naturalization Service (INS) for temporary protected status (TPS).[1] Abreu identified himself as an attorney to Yanes and represented to her that he was qualified to provide assistance in immigration matters. Yanes paid Abreu $550 for the preparation and filing with INS of the necessary forms for TPS. Abreu prepared and filed an application for TPS on Yanes’ behalf, as well as a work authorization form. Yanes’ TPS application was “placed in suspense” by the INS because the personal check tendered by Abreu was rejected for insufficient fees. After Abreu’s check “bounced,” the INS contacted Yanes and requested payment of the fee plus a $30 service charge. The INS ultimately denied Yanes TPS when she was unable to repay the filing fee and service charge.
Count II. In May 1999, Dr. David Garcia and his wife, Andrea Lugo Garcia, (the Garcias) contacted Abreu to represent Mrs. Garcia in an upcoming immigration court hearing, and to help Dr. Garcia reopen his immigration case. Abreu stated that he would help the Garcias obtain their green cards and that he would represent Mrs. Garcia at her hearing. Abreu gave them a card identifying himself as “Director of the Alliance Legal Group, Licensed Legal Expense Agents, Family, Business, Group.” The card listed services that included “Immigration services, Green Card-Citizenship, Relative Petition, Deportation Cases, Professional Visas-Appeals.” The Garcias paid Abreu $3450 for his services. On July 29, 1999, Abreu represented Mrs. Garcia in an immigration hearing. After that, he told the Garcias that he would continue to prepare their documents, but he would no longer represent them in court. In November 1999, Dr. Garcia paid Abreu an additional $340 for filing fees. In or about June 2000, Abreu sent the Garcias a letter stating that he would no longer represent them and that they needed to find another attorney.
The Bar argues that Abreu’s actions constitute UPL and present the potential for substantial public harm. The Bar asks this Court to issue a permanent injunction preventing and restraining Abreu from engaging in the acts complained of and otherwise engaging in the practice of law in Florida until he is duly licensed to practice law in this state. Finally, the Bar asks that this Court tax the costs of these proceedings against Abreu.
On October 16, 2001, this Court issued an order directing Abreu to show cause why he should not be enjoined from engaging in UPL. At first, service was not accomplished because Abreu had moved from his last known address. On February 22, 2002, this Court issued a second order to show cause. A private process server ultimately accomplished service and an affidavit of service was filed with this Court. Abreu did not respond to this *754 Court’s order to show cause. On May 20, 2002, the Bar filed a motion to decide the case upon its merits.
Under Rule Regulating the Florida Bar 10-7.1(b)(4), if a respondent in a UPL case fails to respond to an order to show cause issued by this Court, “the allegations of the petition [for injunctive relief filed by the Bar] shall be taken as true for purposes of that action.” Further, “upon its motion or upon motion of any party, [the Court will] decide the case upon its merits.” Since Abreu has elected not to respond to our order to show cause, we grant the Bar’s motion and proceed to decide this case on its merits.

ANALYSIS

Accepting the allegations in the Bar’s petition as true, we conclude that Abreu’s conduct with Yanes and the Garcias constitutes the unlicensed practice of law. In Florida Bar v. Becerra, 661 So.2d 299, 300 (Fla.1995), the Bar and the respondent entered a joint stipulation agreeing that Becerra, a nonattorney, should be enjoined from engaging in various conduct, including the following: representing to the public that she or any of her employees were capable of advising on and handling matters requiring legal skills, allowing members of the public to rely on her to prepare legal forms or documents affecting their legal rights, and answering questions from individuals and entities as to which particular INS forms should be filed, how to fill out the forms or applications, or what supporting documentation should accompany the forms or applications. Most, if not all, of Becerra’s UPL conduct occurred in the context of advising individuals as to immigration matters, because the stipulation provided that “the preparation of forms to effect a change in immigration status requires legal training and familiarity with immigration laws and that failure to properly prepare the forms could result in great harm, including deportation.” Id. at 299. We approved the stipulation and concluded that Becerra had engaged in UPL, enjoining her permanently from engaging in the aforementioned conduct.
In the instant case, Abreu prepared and filed a TPS application for Yanes and assisted the Garcias in preparing documents related to obtaining green cards.[2] We conclude that under Becerra, Abreu’s preparation and filing of immigration documents constitutes the unlicensed practice of law. See also Florida Bar v. Davide, 702 So.2d 184, 185 (Fla.1997) (preparation of legal documents by non-lawyer for another constitutes UPL); Florida Bar v. Rodriguez, 509 So.2d 1111 (Fla.1987) (nonattorney who filed immigration forms for clients engaged in the unlicensed practice of law).
Further, this Court has held that representing individuals at hearings before the INS, except to the extent INS regulations allow representation of the individual by a nonlawyer, constitutes UPL. See Florida Bar v. Corpa Immigration Services, 642 So.2d 548 (Fla.1994); Florida Bar v. Aberasturia, 529 So.2d 690, 691 (Fla.1988); Florida Bar v. Dobbs, 508 So.2d 326 (Fla.1987). Title 8 C.F.R. § 292.1(a)(3) (2002), provides that a reputable individual of good moral character, *755 who is not an attorney or a law student, may represent individuals in immigration proceedings, provided that the following conditions are met:
(i) He is appearing on an individual case basis, at the request of the person entitled to representation;
(ii) He is appearing %vithout direct or indirect remuneration and files a written declaration to that effect;
(iii) He has a pre-existing relationship or connection with the person entitled to representation (e.g., as a relative, neighbor, clergyman, business associate or personal friend), provided that such requirement may be waived, as a matter of administrative discretion, in cases where adequate representation would not otherwise be available; and
(iv) His appearance is permitted by the official before whom he wished to appear (namely, a special inquiry officer, district director, officer-in-charge, regional commissioner, the Commissioner, or the Board), provided that such permission shall not be granted with respect to any individual who regularly engages in immigration and naturalization practice or preparation, or holds himself out to the public as qualified to do so.
(Emphasis added.)[3] We conclude that Abreu does not fall under this provision of the code because he charged the Garcias $3450 for his services, which included representing Mrs. Garcia at an immigration hearing. Further, Abreu gave the Garcias a business card stating that he was director of the “Alliance Legal Group,” which advertised the group as providing immigration services. In doing so, Abreu held himself out to be qualified to provide assistance in INS matters for remuneration. In light of these factors, we conclude that Abreu’s representation of Mrs. Garcia at an INS hearing was not permitted under 8 C.F.R. § 292.1(a)(3) and, therefore, constitutes the unlicensed practice of law.
Finally, Abreu’s identifying himself to Yanes and the Garcias as an attorney and his possession of a business card identifying himself as the director of a legal group providing assistance in immigration matters constitutes UPL. In Florida Bar v. Matus, 528 So.2d 895, 896 (Fla.1988), this Court held that a respondent who maintained a business card representing himself as president of Latinoamericano De Inmagracion, Inc., and who listed his services as including, but not limited to, tourist visa extensions, student visas, political asylum, and residency had engaged in UPL. See also Becerra, 661 So.2d at 300 (nonlawyer enjoined from advertising in any manner that would lead a reasonable lay person to believe that the respondent could offer legal services, legal advice, or legal assistance to the public in immigration and naturalization matters); Dobbs, 508 So.2d at 327 (nonlawyer enjoined from representing to the public either personally or through advertisement that he was an attorney or was capable of advising on and handling matters requiring legal skills).
While this Court is expressly charged under the Florida Constitution with regulating and disciplining licensed members of The Florida Bar, we also have a duty to protect the public from laypeople who claim that they are licensed to practice law, but are not. See generally Flori *756 da Bar v. Neiman, 816 So.2d 587, 599 (Fla.2002) (noting that “just as the public must be protected from uneducated and unlicensed physicians in an operating room, the public must be protected from bogus attorneys seeking to profit from the problems of the innocent and uninformed ... who may be taken in by a smooth but deceitful demeanor”). These nonattorneys advertise themselves as being capable of assisting individuals in their legal matters, but often end up inflicting serious harm upon unsuspecting persons. As noted in Becerra, UPL can have especially dire consequences in immigration matters because mismanagement of the client’s case could result in deportation. In the instant case, Yanes had her TPS application denied because Abreu’s check accompanying Yanes’ application bounced and Yanes was unable to repay the filing fee and the service charge. The Garcias were left in a compromised position when Abreu suddenly informed them that he could no longer represent them, and they would have to find “another attorney.” Abreu’s conduct demonstrates a total lack of concern for the well-being of the individuals who trusted him. This Court has a duty to stop such abuse of members of the public.
Accordingly, respondent Erdon I. Abreu is hereby enjoined from engaging in the practice of law in the State of Florida until he is duly licensed to practice law in this state. Recognizing that the INS has the authority to decide when and to what extent nonattorneys may represent individuals before the Service, we limit this injunction to the extent that the INS allows such representation by nonattorneys. In the event Abreu engages in any of the prohibited conduct, he will be found in indirect criminal contempt of this Court. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Erdon I. Abreu, in the amount of $451.46, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., and SHAW, WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.

. The federal statute governing temporary protected status is 8 U.S.C. § 1254a (2000). For an abbreviated explanation of TPS, see Immigration & Naturalization Service, Glossary & Acronyms, http://www.ins.us-doj.gov/graphics/glossary4. htm# T (last modified June 13, 2002).

. Although the Bar’s statement that Abreu "prepared” forms and documents for Yanes and the Garcias is somewhat vague, and the term "prepare” can encompass a wide range of activities, it is highly unlikely that the Bar would have filed a UPL petition had Abreu been engaged in mere secretarial services, and the fees charged indicate the contemplation of more than clerical involvement. Further, even if he had been engaged in solely secretarial services, Abreu had ample opportunity to challenge or refute the Bar's allegations by filing a response to this Court’s order to show cause, but elected not to do so.

. General counsel for the INS has stated that the term “representation” has a very broad meaning in the context of INS law: "It includes activities which range from incidentally preparing papers for a person, to giving a person advice about his or her case, to appearing before the Service on behalf of a person.” Role of Visa Consultants in the Practice of Immigration Law, Op. Gen. Couns. 92-29 (June 9, 1992).